OPINION
Defendant, Kevin Caes, appeals from his conviction and sentence for kidnapping, multiple counts of rape, felonious assault on a peace officer, and other offenses.
On or about July 17, 1997, Laura Hudgens was standing on a street corner in Nashville, Tennessee, offering sexual services for hire. Defendant pulled up and indicated that he was interested in purchasing Ms. Hudgen's services. Ms. Hudgens got into Defendant's vehicle and he proceeded to drive to a remote location. Defendant paid Ms. Hudgens for the service he wanted performed, and she began to perform the service. At that point, Defendant pulled out a stun gun and used it to subdue Ms. Hudgens. He then bound and gagged Ms. Hudgens, hid her in the hatchback area of his vehicle, and then transported her overnight to a house trailer near Clinton, Indiana.
For the next three weeks Defendant held Hudgens captive at the trailer, bound, gagged and naked. Defendant repeatedly committed oral, vaginal and anal rape upon Hudgens during this time. He also physically abused Hudgens, striking her in the head, driving an ice pick into her eye, and forcing her to ingest his urine.
Fearing that someone may have seen Hudgens, on or about August 13, 1997, Defendant drove Hudgens to his parents' home in Harrison Township, Montgomery County, Ohio. Defendant's parents were gone on vacation. For the next week Defendant held Hudgens captive in the basement, naked, chained to a bed, bound hands and feet, and gagged. During this time Defendant committed oral, vaginal, or anal rape upon Hudgens two or three times every day. On August 20, 1997, while Defendant was gone from the home, Hudgens worked herself free and triggered a home alarm system. Police responded and found Hudgens. While police were still on the scene, Defendant returned. He attempted to run over several officers who were standing in the yard, and a chase ensued. After crashing his vehicle Defendant was apprehended.
Defendant was subsequently charged with kidnapping, twenty-two counts of rape, three counts of felonious assault on a peace officer, failure to comply with the order of a police officer, and unlawful possession of a dangerous ordnance. A sexually violent predator specification was attached to the kidnapping and rape charges. Following a jury trial Defendant was found guilty of all charges and specifications. The trial court sentenced Defendant to consecutive terms totaling one hundred ten years to life.
From his convictions and sentences Defendant has timely appealed to this court.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT ADMITTED EVIDENCE THAT WAS HIGHLY INFLAMMATORY, AND APPELLANT WAS THUS DENIED A FAIR TRIAL UNDER THE DUE PROCESS CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTIONS.
During its case-in-chief the State introduced photographs from magazines that police recovered from Defendant's home depicting women held in sexual bondage. The women depicted were nude and bound in ways remarkably similar to how, according to the evidence, Hudgens was kept bound by Defendant. He argues that the evidence was irrelevant and inflammatory.
The State contends that the photographs were admissible pursuant to Evid.R. 404(B), because they tend to show defendant's intent and that he had a plan to do what he did to this victim. The State also asserts that this evidence rebuts Defendant's claim of insanity, that he did these things to the victim because God told him to and he was following the voice of God, because the jury could reasonably infer from this evidence that Defendant was driven not by God's voice, but by his own sadistic sexual urges. The State claims that this is a reasonable inference which can be drawn because the photographs depict sexual bondage situations nearly identical to those used by Defendant with this victim.
Defendant objected to the admission of these photographs, arguing that this evidence was not admissible pursuant to Evid.R. 404(B), and in any event, the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A). The trial court overruled Defendant's objections and admitted only those photographs that closely resembled Defendant's actions in this case. Defendant now argues that the trial court abused its discretion in admitting this evidence.
The admission or exclusion of evidence is a matter resting within the sound discretion of the trial court, and its decision in such matters will not be disturbed on appeal absent an abuse of discretion. State v. Hymore (1967), 9 Ohio St.2d 122; State v. Long (1978), 53 Ohio St.2d 91. An abuse of discretion connotes more than simply an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980),62 Ohio St.2d 151.
Evid.R. 404(B) provides:
 (B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Defendant argues that these photographs were not admissible pursuant to Evid.R. 404(B) because mere possession of this material is not illegal and, therefore, his possession of it does not constitute a "crime, wrong or act" for purposes of Evid.R. 404(B). We have previously rejected this argument, because the word "act" as used in Evid.R. 404(B) is not limited to illegal conduct. State v. Benasutti (July 19, 1996), Clark App. No. 95CA109, unreported.
Defendant next argues that the word "act" as used in Evid.R. 404(B) implies some affirmative, demonstrative action, and that his mere possession of this material does not qualify as an "act" as contemplated by Evid.R. 404(B). We likewise considered and rejected this claim. Benasutti, supra.
Lastly, Defendant argues that even if this material is admissible per Evid.R. 404(B), it nevertheless must be excluded because due to its pornographic nature which is very inflammatory, and because it closely resembles acts Defendant is accused of committing in this case its probative value is substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A). We disagree.
The trial court concluded that because these photographs depict nude women who were bound and restrained in ways remarkably similar to how Defendant kept the victim in this case, the jury could reasonably infer from that evidence that Defendant's actions resulted from a plan that he had to do these things. We agree that these photographs have probative value in demonstrating Defendant's intent and his plan, and they are admissible pursuant to Evid.R. 404(B).
To the extent that these photographs permit an inference that Defendant's actions in this case were part of a plan, they rebut Defendant's insanity claim. During opening statements the defense told the jury that Defendant was insane, that he was listening to and following the voice of God in doing the things he did in this case. Defendant subsequently called as witnesses his father and three medical experts who testified regarding Defendant's sanity. The State contends, and we agree, that to the extent these photographs permit an inference that Defendant's criminal conduct mimicked what was depicted in the photographs, that suggests that Defendant was driven by his own sadistic sexual desires and not by God's voice.
Because of the claim made in this case relative to Defendant's insanity claim, that he was following what God told him to do with this victim, admitting the photographs to rebut that insanity claim was proper. While such evidence would have been more appropriate during the rebuttal portion of the State's case rather than during its case-in-chief, the insanity claim that Defendant made in his opening statement was sufficiently specific to permit the State to rebut the claim as it did.
The probative value of this evidence was not substantially outweighed by the danger of unfair prejudice, and the trial court did not abuse its discretion in admitting this evidence. The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED PREJUDICIAL ERROR THAT CAUSE APPELLANT TO HAVE AN UNFAIR TRIAL, WHEN IT ADMITTED HEARSAY EVIDENCE DETAILING HUDGENS' RENDITION OF ALL THE THINGS APPELLANT HAD DONE TO HER.
During the trial Jewell Phaff, an emergency room nurse who assisted the victim at Good Samaritan Hospital, testified about the medical history she took from the victim. Nurse Phaff testified without objection that the victim stated that she had been kidnapped in Tennessee and held against her will for several weeks, and that during that time she was repeatedly raped. When nurse Phaff was asked to relate the various types of rape that the victim described, Defendant objected on hearsay grounds. The trial court overruled Defendant's objection, concluding that this testimony would fall within the medical diagnosis and treatment exception to the hearsay rule. Nurse Phaff then proceeded to relate the victim's account of kidnapping and repeated sexual assault over a period of several weeks. Defendant now complains that the trial court abused its discretion in admitting Phaff's hearsay testimony.
Hearsay is defined in Evid.R. 801(C):
 "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
The medical diagnosis or treatment exception to the hearsay rule is set forth in Evid.R. 803(4):
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
 (4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
At the outset, we note that the State argues that Defendant failed to preserve this issue for appellate review by failing to object to nurse Phaff's lengthy narrative. We disagree. Defendant did posit an objection to this line of testimony by Nurse Phaff, arguing that her testimony was hearsay and was not related to medical treatment, and therefore did not fall within the hearsay exception. The trial court disagreed, and overruled Defendant's objection. Defendant may have reasonably thought it futile at that point to repeat this same or similar objections to nurse Phaff's testimony about what the victim said happened to her.
The victim in this case was held captive for several weeks, naked and bound by both her ankles and wrists. She was repeatedly assaulted both physically and sexually. She endured a horrendous experience, both physically and psychologically. We conclude that the vast majority of what the victim related to nurse Phaff wherein she described what had happened to her, consisted of statements relating to the inception, cause, or external source of the victim's condition and injuries, which was reasonably pertinent to diagnosis and treatment. Accordingly, this evidence clearly fits with the medical diagnosis or treatment exception to the hearsay rule. Evid.R. 803(4).
Notably, what the victim said had happened to her, as related by nurse Phaff, did not concern fault or guilt, as when a patient states that an injury arose from a collision that occurred when a defendant "ran a red light." Such statements which portray fault are not reasonably pertinent to diagnosis or treatment. The evidence at issue here concerning the cause or source of the victim's condition and injuries is relevant to diagnosis and treatment. Moreover, we note that the victim took the stand at trial and testified about these very same matters. The trial court did not abuse its discretion in admitting this evidence.
The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT DETERMINED THAT APPELLANT WAS COMPETENT TO STAND TRIAL AFTER APPELLANT MADE SEVERAL OUTBURSTS DURING THE TRIAL.
Shortly after his original trial commenced in January 1998, Defendant intentionally cut his wrists. Following an evaluation, the trial court found Defendant presently incompetent to stand trial and declared a mistrial. Further evaluations were conducted. The trial court reaffirmed its finding following a hearing in February 1998, concluding that Defendant was incompetent and committing him to Twin Valley Psychiatric Hospital for treatment.
Doctors at Twin Valley informed the trial court in June 1998 that Defendant's competency had been restored. The court ordered additional evaluations. Following hearings on December 17, 18 and 23, 1998, the trial court found in a decision filed January 4, 1999, that Defendant was competent to stand trial and that Defendant had been feigning schizophrenia in order to avoid prosecution.
Just prior to the commencement of trial in June 1999, another mental evaluation was conducted and a hearing was held June 7-8, 1999. At that hearing another expert, Dr. Humbert, testified that Defendant fakes mental illness. The trial court reaffirmed its earlier decision at the conclusion of this hearing, that Defendant was competent to stand trial, and Defendant's trial commenced immediately thereafter.
During the trial Defendant refused to sit at the defense counsel table, and he would periodically mumble. When the victim testified that Defendant threatened to anally rape her, the following outburst occurred:
 DEFENDANT CAES: They're making you say this. They're making you say this.
 THE COURT: Take the jury out, please. Take the jury out, if you would.
 DEFENDANT CAES: They're making you say this, sweetheart. Sweetheart, no.
 THE COURT: And we'll take a brief recess and I'll see counsel in chambers.
(Jury removed from the courtroom.)
 DEFENDANT CAES: They're making you say this. You know it. You know it, you know, Laura. I do this to you someday, too, and you will know. You'll do the same thing. You know it, Laura.
Defense counsel moved for a mistrial, claiming that Defendant's refusal to sit at counsel table, his mumblings, and his courtroom outburst demonstrate that he is incompetent to stand trial. The trial court overruled that motion, noting that immediately prior to the start of trial Dr. Humbert had testified that Defendant is presently competent and that he fakes mental illness. The court also noted the previous December 1998 hearing and its January 4, 1999 decision wherein the court concluded that Defendant feigns schizophrenia in order to avoid prosecution.
Defendant was returned to the courtroom and warned that if he disrupted the proceedings again he would be removed from the trial. The trial court also instructed the jury that Defendant's courtroom behavior could not be considered by them for any purpose, nor could it influence their verdict. When the witness began to testify again, Defendant committed another outburst and was removed from the courtroom. Defendant returned to the courtroom days later.
Defendant argues that the trial court should have conducted another competency hearing following Defendant's courtroom outbursts. As Defendant did not specifically request such a hearing, the question becomes whether the court had a sua sponte duty to conduct a hearing.
R.C. 2945.37(B) provides:
 In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.
In State v. Draughn (1992), 76 Ohio App.3d 664, 669, the Court of Appeals stated:
 In determining whether to sua sponte hold a competency hearing, the court should consider: (1) doubts expressed by counsel as to competency; (2) evidence of irrational behavior; (3) the defendant's demeanor at trial; and (4) prior medical opinion concerning competency.
The decision whether to conduct a competency hearing after trial has commenced is a matter resting within the trial court's sound discretion. State v. Filiaggi (1999), 86 Ohio St.3d 230.
Extensive competency hearings were held in this case in December 1998, but six months before trial, following which the trial court concluded that Defendant was presently competent to stand trial and that he had been feigning mental illness to avoid prosecution. Additionally, two days before Defendant's trial commenced, another competency hearing was held at Defendant's request on June 7-8, 1999. The trial court heard additional medical evidence indicating that Defendant was feigning mental illness. Once again, the trial court found Defendant competent to stand trial and a jury trial began immediately thereafter.
On the basis of these facts and circumstances, the trial court could reasonably conclude that Defendant's courtroom outbursts were further efforts to feign mental illness in order to disrupt the trial proceedings and/or avoid conviction. Defendant's courtroom behavior was consistent with the notion that this was just "more of the same" and did not signal a change in his mental state that would reasonably portray a genuine need to conduct yet another competency hearing. The trial court did not abuse its discretion, as that term is defined by law, in failing to conduct another competency hearing during the trial.
The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR THE GUILTY VERDICTS SHOULD BE REVERSED BECAUSE THE EVIDENCE SHOWS THAT APPELLANT MET HIS BURDEN OF PROVING INSANITY; THUS THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
To prove insanity the Defendant must prove by a preponderance of the evidence that at the time of the offense, as a result of a severe mental disease or defect, he did not know that his acts were wrong. R.C. 2901.01
(A)(14); R.C. 2901.05(A). On the question of insanity, the credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v. Thomas (1982),70 Ohio St.2d 79.
Defendant did not deny committing the acts the State had proved. Instead, he claimed that he was insane, that he was performing God's work and had been instructed by God to do these things. Three expert witnesses testified that Defendant was insane at the time of these offenses. Defendant now argues that the jury's guilty verdicts are against the manifest weight of the evidence because he had proved that he was insane. Defendant argues that in choosing to believe the State's expert witnesses over his, the jury lost its way and became overwhelmed by the horrendous nature of the acts he committed upon this victim.
A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. State v. Bradley (October 2, 1997), Champaign App. No. 97-CA-03, unreported.
Defendant's father testified about bizarre behavior on Defendant's part that he had witnessed. Three medical experts testified that Defendant was insane at the time of these offenses. On the other hand, four medical experts testified that Defendant was sane, and that he was feigning mental illness. Thus, the evidence regarding Defendant's sanity was in a state of equipoise.
On those facts and circumstances, we will not substitute our judgment for that of the trier of facts concerning the Defendant's sanity. The jury's decision to accept the testimony by the State's expert witnesses over Defendant's experts on this issue, which is reflected by their guilty verdicts, is supported by the evidence presented at trial. In reviewing this record as a whole, we cannot say that the evidence weighs heavily against a finding of sanity, that the jury lost its way, or that a manifest miscarriage of justice has resulted. Defendant's convictions are not against the manifest weight of the evidence.
The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
 _______________ GRADY, J.
BROGAN, J. and FAIN, J., concur.